UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

JAMES MICHAEL MURPHY, M.D.,

          Plaintiff,

v.

THOMAS J. WILHELM, M.D.; and HOOD RIVER DISTRICT ATTORNEY OFFICE;

          Defendants.

Case No. 3:19-cv-01733-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Defendant Thomas Wilhelm seeks the court's assistance in preventing plaintiff James Michael Murphy from directly communicating with him regarding the facts and claims raised in this case. The court GRANTS Wilhelm's request and ORDERS Murphy to immediately cease communicating with Wilhelm, as set out more specifically at the end of this Opinion and Order.

\\\\\

\\\\\

Page 1 – OPINION AND ORDER

*Factual Background*

Murphy is proceeding as a pro se plaintiff in this case. He filed his complaint case against the defendants on October 30, 2019, alleging claims under 42 U.S.C. § 1983 for violation of privacy, 18 U.S.C. § 241 for conspiracy to violate confidentiality, HIPAA for improper disclosure, the federal False Claims Act for ordering unnecessary medical tests, and ORS 165.800 for identity theft.

Jeffrey Young, attorney for defendant Wilhelm, submitted by email on February 18, 2021, a letter to the court (ECF No. 74), in which he asked the court to direct Murphy to stop emailing case-related communications directly to Wilhelm. Young stated that Murphy had been sending to him emails in which Murphy discussed the merits of his claims against Young's client, Wilhelm, and copied those emails directly to Wilhelm. Young stated that nine such emails had been sent since January 9, 2021, as well as two additional emails to Wilhelm's insurer, and that Murphy also placed a handwritten letter in Wilhelm's physical mailbox.[1] Young said that he had asked Murphy "to cease all direct communication with my clients because they are represented by counsel, but he has refused." Citing the court's inherent authority to manage its docket, Young requested the court's "involvement to deter [Murphy] from engaging in further improper behavior."[2]

Murphy emailed his response to Young's letter, to the court on February 22, 2021. (ECF No. 79.) In his three-page letter, Murphy discussed the merits of the case and leveled various

---

[1] These emails and others appear at ECF No. 77. Since Young's February 18 letter to the court, Murphy blind-copied Wilhelm on a February 24, 2021 email Murphy sent to Young. (ECF No. 78.)

[2] The court informed the parties that it considered Young's letter an oral motion, set a hearing date on the motion, and directed Murphy to respond to Young's letter by February 22, 2021. (ECF No. 74.)

charges against Young, the defendants, and this court, and only briefly addressing the sole issue Young raised in his letter, Murphy's direct communications with Wilhelm. On that point, Murphy asserted:

### Holding prose litigants to an artificial, pretentious standard

> Plaintiff is a party who is representing himself. By its terms, then, the rules prohibiting lawyers from contacting a represented party on a client's behalf [do] not apply to the plaintiff. While Mr[.] Young has located a few decisions that applied the similar rules to pro se litigants, those decisions ["]do not explain how a rule governing the professional conduct of lawyers can be legitimately applied to non-lawyers, and no such basis is offered by the defendants or otherwise apparent to this court." (emphasis added) (*Isaacs v. Dartmouth Hitchcock Med. Ctr., et al United States District Court Of New Hampshire*, Civil No. 12-cv-40-JL (D.N.H. Jul. 9, 2012)

(ECF No. 79-2.)

Murphy's February 22 letter reiterated the position he took with Young on January 9, 2021, when he responded by email to Young's request to stop directly emailing Wilhelm, by proclaiming:

> Did you find out that I was correct? That as a non-lawyer : I can communicate directly with your client – perhaps your client will choose to respond or consider my settlement offer.
>
> It is only a Bar rule that : Lawyers are prohibited from communicating with a represented party. There is nothing wrong with nonlawyers communicating with the other side as long as the communication is not at the direction of counsel (and my communication to Wilhelm has never been at the direction of counsel).

(ECF No. 77, p. 10.) Both in his emails and during the March 1, 2021 hearing on Wilhelm's motion, Murphy expressed his frustration at Wilhelm's failure or refusal to respond to his settlement offers and demands, and during the hearing he explained his belief that Wilhelm had not been given the settlement proposals he sent to Young, and thus emailed Wilhelm in an effort to get a response to his proposals. He further explained that his February 22, 2021 filing of a

small claims action against Wilhelm in Hood River Circuit Court (*see* ECF No. 78) was intended in large part to push forward the settlement discussion he wanted to have with Wilhelm in this case.

*Discussion*

District courts have inherent power to control their dockets and punish for violation of their orders. *Clark v. Wells Fargo Bank, et al.*, Case No. 6:20-cv-00253-AA, 2020 WL 3038072, at *3 (D. Or. June 5, 2020), citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). *See also* Federal Rule of Civil Procedure 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.) This district has made clear that pro se litigants are required to follow all rules that govern proceedings in this court:

> **Court Rules and Procedures**
> Self-represented parties are expected to comply with the Federal Rules of Civil Procedure ("FRCP") and the Court's Local Rules as well as the Federal Rules of Evidence ("FRE").

"Representing Yourself in Court – Information about Representing Yourself," United States District Court, District of Oregon, https://ord.uscourts.gov/index.php/2015-02-10-16-10-22/information-about-representing-yourself (last visited March 1, 2021). Judges in this district have enforced this requirement, noting that "'[p]ro se litigants must follow the same rules of procedure that govern other litigants.'" *Ovitsky v. Oregon*, No. 3:12–cv–02250–AA, 2014 WL 412423, at *3 (D. Or. Feb. 3, 2014), citing *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.2d 896 (9th Cir. 2012). *See also Clark v. Wells Fargo Bank*, 6:14-cv-01103-TC, at 2 (D. Oregon Nov. 24, 2014)(citing same, and warning pro se plaintiff that "litigation is not a game in which he can make up his own rules");

*Clark v. Wells Fargo Bank, et al.*, Case No. 6:20-cv-00253-AA, 2020 WL 3038072, at *4 (D. Or. June 5, 2020) (sanctioning plaintiff for violating court order prohibiting him from directly contacting represented defendants in the case, and warning that "failure to comply with the requirements of this order will result in dismissal of this action").

Murphy's reliance on *Isaacs v. Dartmouth Hitchcock Med. Ctr., et al United States District Court Of New Hampshire,* Civil No. 12-cv-40-JL (D.N.H. Jul. 9, 2012) (ECF No. 43)[3], is misplaced for four reasons. First, it is a district court opinion from another district and is not controlling on this court. Second, the case directly conflicts with decisions in this district holding that pro se litigants may not directly communicate with a party represented by counsel. Third, that portion of the *Isaacs* order on which Murphy relies addressed a different legal argument than that which Wilhelm raises here. The *Isaacs* defendants relied on the New Hampshire Rules of Professional Conduct's prohibition on lawyers directly contacting a represented party; the court correctly noted that those rules do not apply to a non-lawyer. *Isaacs*, at 3. Fourth, Isaacs recognized the principle that Wilhelm relies on here: the court's inherent authority to manage its docket, which authority includes the power to prevent a pro se litigant from communicating with a represented party:

> This is not to say that this court lacks the power, as part of its managerial authority over its cases, to prevent Isaacs (or any pro se litigant who comes before it) from directly contacting represented parties in order to prevent harassment. But, while the defendants predict that allowing Isaacs direct contact with them "will lead to the harassment and intimidation of individuals," they offer nothing to substantiate that charge.

(*Isaacs*, at 4.)

---

[3] For the convenience of counsel, the parties, and those who read this opinion and order, the *Issacs* order is attached hereto.

Unlike the *Isaacs* defendants' failure to provide the court with evidence of harassment and intimidation, here Wilhelm has provided ample evidence of such conduct. Murphy's repeated emails are accusatory, sometimes threatening, and always couched in an inappropriate and unprofessional tone. (*See, e.g.*, ECF No. 77, at 9, 18, 21, 23.) Thus, even under the more restrictive *Isaacs* analysis -- analysis more restrictive than that applied by the courts of this district -- Murphy's conduct warrants an order that he not directly communicate with any party in this case that is represented by counsel.[4]

Judge Aiken addressed a similar situation in *Clark v. Wells Fargo Bank, et al.*, Case No. 6:20-cv-00253-AA, 2020 WL 3038072, at *4 (D. Or. June 5, 2020). She previously had ordered plaintiff "not to contact or communicate with defendants . . . or any other person or office associated with [them] except through counsel of record." *Id.* at *1. Judge Aiken also had "reminded" plaintiff that "even as a pro se litigant, he has an obligation to learn and follow the rules and procedure of the Court, as well as Court orders," and warned him that "his behavior was disrespectful and that the Court would not tolerate such treatment of the Court and Clerk's Office staff going forward." *Id.* at *3.

Plaintiff violated that order and defendant Wells Fargo filed a motion to show cause why plaintiff should not be held in contempt. *Id.* Plaintiff, citing legal theories underlying his case, had asserted to the defendants that "the law and Wells Fargo policy" required him to continue to communicate directly with the parties. *Id.* at *2. In his brief opposing defendants' show-cause order motion, he reasserted that position in more detail and further justified his direct

---

[4] As made clear in this court's earlier discussion herein, *any* form of direct contact by a pro se litigant with a represented party is not permitted. No harassment or intimidation need be demonstrated first before the court may exercise its inherent authority order such contact cease.

Page 6 – OPINION AND ORDER

communication by explaining that "'most of what defendants call "vexation" is me trying to get them to respond to anything[.]'" *Id.* at *3.

Judge Aiken found that plaintiff had violated the court's order to not communicate directly with the defendant parties, and that his violation was "knowing, intentional, and deliberate." *Id.* at *4. Citing Rule 41(b) and the Supreme Court's *Chambers* decision, she sanctioned plaintiff for violating her earlier no-contact order. Id. at *3, *4. She reiterated her order that plaintiff "shall not communicate with any represented defendant . . . except through counsel of record," and warned plaintiff that "failure to comply with the requirements of this order will result in dismissal of this action." *Id.* at *4.

Murphy's conduct here parallels that of the *Clark* plaintiff's that prompted the defendants' show-cause motion in that case. Murphy has improperly communicated with Wilhelm about the merits of this lawsuit, deliberately circumventing Wilhelm's lawyer, Young, in the process and then ignoring Young's repeated requests to cease such conduct. The court orders Murphy to not communicate directly with Wilhelm, including by "cc" of emails and letters, about any matter relating to this case. Hereinafter, Murphy shall communicate only with counsel of record for Wilhelm as well as with counsel of record for the Hood River District Attorney's Office.

There remains the question of the effect on this Order of Murphy's small claims case, which he filed against Thomas J. Wilhelm, Inc., the same day he submitted to this court his response to Young's February 18 letter. Specifically, this court must resolve whether Murphy may contact Wilhelm directly under the umbrella of the small claims case, and whether this court can prohibit that direct contact in whole or in part. The court concludes that it can prohibit that contact in its entirety, for the three reasons explained below.

First, because Murphy names Wilhelm's professional corporation and not Wilhelm personally as the defendant in his small claims case, he must communicate only with the professional corporation's designated agent, which is Young. Murphy's small claims case asserts that "Thomas J. Wilhelm, Inc." violated Oregon's Unfair Trade Practices Act. (ECF No. 78, at 3.) Generally, parties in small claims matters may not be represented by lawyers in those proceedings. ORS 55.090(1)("no attorney at law nor any person other than the plaintiff and defendant shall become involved in or in any manner interfere with the prosecution or defense of the litigation in the department without the consent of the justice of the justice court."). Subsection (2) of the statute, however, provides in relevant part: "[A] party that is not a natural person, state or any city, county, district or other political subdivision or public corporation in this state may appear as a party to any action in the department without appearance by attorney." Subsection (2)'s use of the verb "may" rather than the verb "must," and lacking the imperative in Subsection (1) that "no attorney" may participate in a small claims matter on behalf of an individual, suggests that private corporations such as Wilhelm's are permitted to be represented by a lawyer in small claims proceedings.

Second, Murphy's small claims case and federal lawsuit clearly arise from the same factual nucleus. Murphy disputes this, casting his small claims case as based on different, "recently discovered" facts, but in actuality his small claims case is based on a newly conceived legal theory arising from the same facts: Wilhelm's allegedly negligent medical care and, specifically, Wilhelm's claimed improper disclosure of Murphy's medical information:

> "The defendant, Thomas J Wilhelm (Wilhelm'), a sole proprietor, negligently failed to safeguard ( plaintiff) consumer records and subsequently failed to notify the affected consumer as well as State and Federal regulatory agencies. Defendant Wilhelm, thereby violated the Unlawful Trade Practices Act (UTPA), based on newly discovered evidence."

Page 8 – OPINION AND ORDER

(ECF No. 78, at 6.) Murphy provides the confirming details underlying this theory later in the small claims complaint:

### Action is <u>not</u> barred by a legal 'claim preclusion' doctrine

Plaintiff has alleged in federal court *(Murphy vs Wilhelm MD, et al, Or Dist 3:19-cv-01733)* that Wilhelm MD in his capacity as a physician, violated the plaintiff's right to privacy and thus plaintiff's civil rights). Wilhelm was also negligent: committing malpractice by ordering inappropriate medical tests *and disclosing the results without consent*. Specifically <u>Wilhelm did not act not in the best interest of his patient but rather Wilhelm acted as an agent of the State</u> (acted illegally under the color of State) to aid in the plaintiff's criminal prosecution.

This current claim in small claims court, however, is based on a different nucleus of facts: recently discovered, that demonstrate that Wilhelm as a sole proprietor [sic], *has failed to comply with data breach (PHI) notification to his consumer;* violating State and Federal regulations, causing mental anguish and costs to the plaintiff who has persued [sic] erronous [sic] avenues for damages; because of Wilhelm's fraudulent concealment.

(ECF No. 78, at 9 (underline in original, italics added).) In his federal court complaint, Murphy alleges in relevant part:

**<u>Dr Wilhelm conspired with law enforcement to order, isolate and print the BAC result. He then disclosed a copy of the BAC result to law enforcement for the sole purpose of making the result public, via a public police report. This was used, disclosed as [knowingly] illegally obtained evidence by the HR DA's office, in order to prosecute the plaintiff.</u>**

This act was a violation of a civil right to privacy (4th amendment). It was also a violation of the plaintiff's right to refuse a treatment or a diagnostic evaluation, as well as a flagrant violation of Federal HIPAA rule on patient confidentiality by Dr Wilhelm. The agencies that Wilhelm conspired with also violated Oregon's ORS 192.553 .

The BAC was illegally obtained and disclosed by Wilhelm . . . .

(ECF No. 1, at 2-3 (bold typeface and underline in original.)

Murphy's federal complaint and his small claims complaint focus on Wilhelm's disclosure of Murphy's medical information. The complaints evidence Murphy's singular

Page 9 – OPINION AND ORDER

theory that Wilhelm's allegedly unauthorized disclosure of his personal health information caused him harm. That Murphy devised a new legal theory by which to sue Wilhelm – or his professional corporation – for that harm does not alter that the same events gave rise to the claims asserted in both the federal and small claims cases.

Third, Murphy admitted at the March 1 hearing that he filed the small claims case to prompt a response from Wilhelm to the settlement proposals Murphy made in the federal case. Murphy already had established this fact in his small claims complaint by attesting that he made multiple good faith efforts to settle the dispute with Wilhelm before filing the small claims case on February 22, 2021. Specifically, Murphy stated that before filing his small claims case, he "cc'd multiple emails with settlement offers to the defendant & his agent," that he "notified in writing to defendant's mail – w/no response," and that he

> [M]ade a good faith effort, more than 10 days before filing this small claims case: to settle this matter with Thomas J Wilhelm MD (sole proprietor) in compliance with Oregon small claims court standards. **Plaintiff has made the required attempts to contact defendant personally to ensure that the defendant was personally aware of settlement offers. The plaintiff has also left notice at the defendant's business address.**

(ECF 78, at 4, 6 (bold typeface in original).) The tie between the two lawsuits is undeniable, and Murphy himself has acknowledged that the two cases share the same ultimate goal: settling with Wilhelm his disputes over Wilhelm's provision of medical care to him.

Accordingly, this court will not permit Murphy to communicate directly with Wilhelm personally on any matter related to the federal case or to the small claims case. In this case, Murphy must communicate only with Young, Wilhelm's counsel of record. For the small claims case, Young is the proper recipient of Murphy's communications because Young is the agent of Wilhelm's professional corporation. This court will view any attempt by Murphy to communicate

theory that Wilhelm's allegedly unauthorized disclosure of his personal health information caused him harm. That Murphy devised a new legal theory by which to sue Wilhelm – or his professional corporation – for that harm does not alter that the same events gave rise to the claims asserted in both the federal and small claims cases.

Third, Murphy admitted at the March 1 hearing that he filed the small claims case to prompt a response from Wilhelm to the settlement proposals Murphy made in the federal case. Murphy already had established this fact in his small claims complaint by attesting that he made multiple good faith efforts to settle the dispute with Wilhelm before filing the small claims case on February 22, 2021. Specifically, Murphy stated that before filing his small claims case, he "cc'd multiple emails with settlement offers to the defendant & his agent," that he "notified in writing to defendant's mail – w/no response," and that he

> [M]ade a good faith effort, more than 10 days before filing this small claims case: to settle this matter with Thomas J Wilhelm MD (sole proprietor) in compliance with Oregon small claims court standards. **Plaintiff has made the required attempts to contact defendant personally to ensure that the defendant was personally aware of settlement offers. The plaintiff has also left notice at the defendant's business address.**

(ECF 78, at 4, 6 (bold typeface in original).) The tie between the two lawsuits is undeniable, and Murphy himself has acknowledged that the two cases share the same ultimate goal: settling with Wilhelm his disputes over Wilhelm's provision of medical care to him.

Accordingly, this court will not permit Murphy to communicate directly with Wilhelm personally on any matter related to the federal case or to the small claims case. In this case, Murphy must communicate only with Young, Wilhelm's counsel of record. For the small claims case, Young is the proper recipient of Murphy's communications because Young is the agent of Wilhelm's professional corporation. This court will view any attempt by Murphy to communicate

directly with Wilhelm as evidence of a willful or bad faith violation of this order, warranting imposition of sanctions. *See, e.g., Gibbs v. Nate-N-Al's Deli*, 79 F.3d 1153, at *3 (9th Cir. 1996) ("Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith or fault warranting dismissal.").

*Order*

The court GRANTS Wilhelm's oral motion requesting the court order Murphy to cease communicating with Wilhelm directly. Accordingly,

IT IS HEREBY ORDERED:

1. Murphy shall not communicate directly with Wilhelm regarding any matter related to the federal lawsuit or the small claims case.

2. Murphy shall direct all communications regarding any matter related to the federal lawsuit or the small claims case to Jeffrey Young, Wilhelm's counsel of record in the federal case and the designated agent of Thomas J. Wilhelm, Inc., in the small claims case.

3. All communications Murphy sends to the attorneys of record in the federal lawsuit, Young in the small claims case, this court, and federal court staff regarding any matter related to the federal lawsuit and the small claims case shall be professional and appropriate in both tone and content.

4. Murphy shall not discuss the merits of the federal case or the small claims case with this court's staff. All communications shall be restricted to scheduling and requests for information about court processes.

5. All communications Murphy sends to this court regarding the merits of the federal lawsuit or the small claims case shall be copied to all attorneys of record in the federal lawsuit.

6. Murphy is warned that if the court determines he has failed to comply with the requirements of this order, the court will order sanctions, which could include dismissal of his federal lawsuit. To avoid misunderstandings that might lead to violation of this order, Murphy is directed to first contact the court to obtain clarification of this order's requirements should he have questions about them.

IT IS SO ORDERED.

DATED this 2nd day of March, 2021.

JOHN V. ACOSTA
United States Magistrate Judge